MARY CVELICH, ADMINISTRATRIX OF THE ESTATE OF PAUL CVELICH, DECEASED, PLAINTIFF-APPELLANT, v. ERIE RAILROAD COMPANY, DEFENDANTS-RESPONDENT.

Submitted January 20, 1942—Decided August 4, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and HEHER.

For the appellant, *Alexander Simpson.*

For the respondent, *Collins & Corbin* (*Edward A. Markley* and *Charles W. Broadhurst,* of counsel).

PER CURIAM.

Plaintiff's decedent, Paul Cvelich, was drowned on June 12th, 1936, in the Hudson River, while in the pursuit of his employment as a deckhand on a tugboat owned and operated by the defendant corporation; and this action was brought under section 33 of the Merchant Marine Act of 1920 (46 *U. S. C. A.,* § 688) to recover damages for the pecuniary loss sustained by the next of kin. Negligence in the management and operation of the vessel was alleged. There was a nonsuit on the ground that the evidence as to negligence did not create an issue for the determination of the jury; and the plaintiff appeals from the consequent judgment.

On a prior trial of the issue, there was a verdict and judgment for the plaintiff. This court reversed the judgment

on the ground that there was error in the denial of defendant's motions for a nonsuit and a directed verdict. 120 *N. J. L.* 414. The Court of Errors and Appeals affirmed the judgment of the Supreme Court, but rested it upon error in the charge. 122 *Id.* 26.

We are of the view that the nonsuit was proper. It is not maintained that the deceased fell overboard as the result of defendant's negligence. The contention made here is that there was negligence in "the unskillful maneuvering of the vessel creating a swell around the drowning man and pulling the life preserver out of his reach, which life preserver was on a rope fastened to the boat," contrary to the cited statute (46 *U. S. C. A.,* § 481), and also in the fact that "the line attached to the life preserver was too short."

There was no evidence tending to show negligence in the "maneuvering" of the boat. On the contrary, the proofs reveal that the crew exerted themselves to the utmost to rescue the deceased. The movement of the boat was in large measure due to the action of the tide after it came into close proximity to the deceased and the power had been turned off to facilitate the work of rescue. There was no tangible basis in the evidence for a finding that the lifebuoy used in the attempted rescue was "permanently secured in any way," in violation of the cited statute. The deckhand who threw the buoy into the water "stepped on the end" of the attached rope, obviously for the purpose of retaining control of the buoy. The buoy came within a few feet of the deceased, but, due to exhaustion, he could not reach it. Another deckhand went overboard when the buoy was thrown, but the deceased sank before he could reach him.

While there was evidence that the line attached to the buoy was "about thirteen or fourteen fathoms," the statute provided (46 *U. S. C. A.,* § 481) that where two buoys only are carried, "one shall be fitted with a lifeline at least fifteen fathoms in length," and there was no evidence that the other buoy was not so equipped. Moreover, the proofs show that the length of the line was in no sense the proximate cause of decedent's death.

The judgment is accordingly affirmed.